IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| MAY TRUCKING COMPANY,<br>an Idaho corporation,<br><br>      Plaintiff,<br><br>      v.<br><br>ANDRUS TRANSPORTATION<br>SERVICES, INC., a Utah corporation,<br>and WESTON PETERSON, an<br>individual,<br><br>      Defendants. | Civil No. 05-716-TC<br><br>ORDER |

COFFIN, Magistrate Judge.

Presently before the court is defendants' motion (#44) for partial summary judgment.

## BACKGROUND

On February 11, 2004, a collision occurred between two tractor trailers on Interstate 5 in Jackson County, Oregon. The tractor trailers involved were owned by plaintiff May Trucking Co.

1 - ORDER

and defendant Andrus Transportation Services.

In November 2004, Andrus, through employee Weston Peterson, contacted May Trucking and claimed that May Trucking was responsible for the accident. May Trucking denied liability. Peterson then wrote May Trucking a letter in which he announced Andrus' intent to sue May Trucking if the company did not settle the claims. Peterson also wrote that:

> . . . while all the litigation is going on, I may busy myself with contacting and exploring entities such as insurance commissions, commerce departments, transportation departments, news agencies (since this was a high profile accident) and any other local, state or federal agency that would listen to me.

Sometime after Peterson wrote his letter, the parties met with a mediator in an attempt to resolve the disputes regarding liability and damages owed; however, the mediation was unsuccessful.

Following the failed mediation, Peterson wrote letters to the Oregon Department of Transportation ("ODOT"), two congressmen, the Insurance Department of the State of Idaho, and the Consumer and Business Services Department of the State of Oregon. In the letters, Peterson essentially states that May Trucking was liable for the accident and was not reasonably working towards settling claims.

After receiving the letters from Andrus, ODOT and Oregon's Consumer and Business Services Department consulted with each other, and ODOT contacted May Trucking. May Trucking advised ODOT that it did not believe it was responsible for the accident, and that appears to have been the end of it.

In May, 2005, May Trucking filed a defamation action against defendants in state court. Defendants subsequently removed the case to this court. In its second amended complaint, plaintiff brings three claims: a claim against both defendants for intentional interference with existing and

2 - ORDER

prospective relations; a claim against both defendants for extortion; and a claim against defendant Andrus for negligence. Defendants filed a counterclaim against plaintiff alleging negligence, and have moved for summary judgment on plaintiff's intentional interference and extortion claims.

## STANDARD OF REVIEW

A party is entitled to summary judgment as a matter of law if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show there is no genuine issue as to any material fact." Fed.R.Civ.P. 56(c); Bahn v. NME Hosp's, Inc., 929 F.2d 1404, 1409 (9th Cir. 1991). The moving party must carry the initial burden of proof. This burden is met through identifying those portions of the record which demonstrate the absence of any genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 322-24 (1986). Once the initial burden is satisfied, the burden shifts to the opponent to demonstrate through the production of probative evidence that there remains an issue of fact to be tried. Id. The facts on which the opponent relies must be admissible at trial, although they need not be presented in admissible form for the purposes of opposing the summary judgment motion. Id.

The court must view the evidence in the light most favorable to the nonmoving party. Bell v. Cameron Meadows Land Co., 669 F.2d 1278, 1284 (9th Cir. 1982). All reasonable doubt as to the existence of a genuine issue of fact should be resolved against the moving party. Hector v. Wiens, 533 F.2d 429, 432 (9th Cir. 1976). The inferences drawn from the underlying facts must be viewed in the light most favorable to the party opposing the motion. Valadingham v. Bojorquez, 866 F.2d 1135, 1137 (9th Cir. 1989). Where different ultimate inferences may be drawn, summary judgment is inappropriate. Sankovich v. Insurance Co. Of North America, 638 F.2d 136, 140 (9th Cir. 1981).

Deference to the non-moving party does have some limit. The non-moving party "must set

3 - ORDER

forth specific facts showing that there is a <u>genuine</u> issue for trial." Fed.R.Civ.P. 56(e) (emphasis added). Where "the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." <u>Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corporation</u>, 475 U.S. 574, 587 (1986). The "mere existence of a scintilla of evidence in support of the plaintiff's position would be insufficient." <u>Anderson v. Liberty Lobby Inc.</u>, 477 U.S. 242, 252 (1986). If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted. <u>Id.</u> at 248. However, trial courts should act with caution in granting summary judgment, and may deny summary judgment "in a case where there is reason to believe that the better course would be to proceed to a full trial." <u>Anderson</u>, 477 U.S. at 255.

## DISCUSSION

I.   **<u>Plaintiff's Intentional Interference Claim</u>**

Plaintiff alleges that the March 21, 2005 letter sent by defendant Peterson to ODOT was an intentional interference with its economic relations.

To state a claim for intentional interference with economic relations, a plaintiff must demonstrate each of the following elements:

1. The existence of a professional or business relationship;

2. Intentional interference with that relationship;

3. By a third party;

4. Accomplished through an improper means or for an improper purpose;

5. A causal effect between the interference and damage to the economic relationship; and

6. Damages.

4 - ORDER

McGanty v. Staudrenraus, 321 Or. 532, 535 (1995). Defendants argue that plaintiff is unable to demonstrate any of the last three elements necessary to prove its claim.

The court agrees with defendants that plaintiff has not produced evidence from which a reasonable factfinder could conclude that its relationship with ODOT has been damaged, or that it has suffered damages at all. There is nothing in the record at all that suggests that the relationship between May Trucking and ODOT is in any way different now than it was prior to ODOT's receipt of Peterson's letter. Indeed, the only evidence that the letter did anything at all is the fact that ODOT, after conferring with the Consumer and Business Services Department, contacted May Trucking to discuss the contents of the letter. As far as can be determined, ODOT was satisfied with May Trucking's response, and to date - fifteen months after the letter was sent - no other action has been taken by ODOT.[1] On the record before the court, any damage to the relationship is purely speculative.

Further, plaintiff has not provided evidence of any actual damages suffered from Peterson's letter to ODOT at all. Plaintiff's only evidence of any damages incurred are attorney fees - fees for services which ultimately were used for the filing of this lawsuit - and staff time spent responding to ODOT. However, attorney fees are not "damages" when they are sought in the same action in which the services are rendered, State v. O'Brien, 96 Or.App. 498, 505 (1989), and internal staff time is not recoverable absent some evidence of increased cost or lost earnings, which is not present here. McKee Electric Co., Inc. v. Carson Oil Co., 70 Or.App. 1, 9 (1984). In the absence of any recoverable damages suffered by plaintiff, as well as any evidence of damage to the relationship

---

[1] Indeed, the risk manager for May Trucking stated in his deposition that he was not aware of any adverse repercussions from ODOT or any of the letter recipients. Deposition of Robert Cahill (#47, Ex. 2) at 37.

5 - ORDER

between plaintiff and ODOT, the intentional interference claim must fail.

**II.     Plaintiff's Extortion Claim**

Defendants also move for summary judgment on plaintiff's second claim for relief, alleging that defendants' conduct constituted extortion.

It is entirely unclear that a civil action for extortion is recognized by the Oregon courts. Although plaintiff cites to an Iowa case, Zohn v. Menard, 598 N.W.2d 323 (Iowa 1999), that allowed extortion claims to go forward, those claims were brought under Iowa common law and the case does not clarify whether Oregon recognizes such a cause of action.

The only Oregon cases cited by plaintiff in support of the validity its extortion claim, Hoffman v. Wair, 193 F.Supp. 727 (D.Or. 1961) and Bingham v. Lipman Wolfe & Co., 40 Or. 363 (1901), are distinguishable.[2]  Hoffman was a federal civil rights action brought under 42 U.S.C. § 1983, in which the issue presented to the court was whether under the applicable two-year statute of limitations plaintiff's claims were time-barred. The language cited by plaintiff, in which the court recognized that a conspiracy had been properly pled and that defendants breached their duties to the plaintiff, is neither controlling nor persuasive evidence that Oregon recognizes a cause of action for extortion. Bingham was a case in which the plaintiff had been accused of a crime and falsely imprisoned by agents of the defendant, and released only upon a promise to pay money, which she

---

[2]The remaining case cited by plaintiff, Smithson v. Nordstrom, Inc., 63 Or.App. 423 (1982), was an outrageous conduct case, not an extortion case. The facts of that case - involving the interrogation of a young employee accused of stealing merchandise in which agents of her employer forced her to sign a confession after a lengthy period of threatening her in an isolated, windowless room - convinced the Oregon Court of Appeals that plaintiff had adequately shown that the conduct exceeded the bounds of socially permissible conduct. The facts of the instant case do not present nearly the same picture, and even were the court to construe plaintiff's extortion claim as an outrageous conduct claim, it would not find that plaintiff had pleaded facts sufficient to state such a claim.

6 - ORDER

later did pay in part. She obtained a jury verdict after a trial on her claims of conspiracy to extort and false imprisonment. The Oregon Supreme Court, after considering various evidentiary issues, allowed the jury verdict in her favor to stand, without specifically addressing the question of whether her conspiracy to extort claim was valid. However, even if construed as allowing actions for extortion or coercion, Bingham is distinguishable in that the plaintiff there suffered actual damages due to the conduct of the defendants, which is not the case here.[3]

The court cannot say based on the cases cited by the parties or on its own research that Oregon recognizes a cause of action for extortion, coercion, or attempted extortion or coercion. Regardless, plaintiff has not demonstrated any damages that would be recoverable by it even if such a claim were viable. For these reasons, summary judgment on plaintiff's extortion claim is appropriate.

## CONCLUSION

For the above stated reasons, defendants' motion (#44) for partial summary judgment is granted. The case will proceed to trial on the remaining cross-claims of negligence. Based on this ruling, defendants' motion to compel (#41) is denied as moot without prejudice to refile any portions deemed necessary to prosecute and defend the negligence claims.

DATED this 22 day of June, 2006.

Thomas M. Coffin
United States Magistrate Judge

---

[3] Recognizing that it has limited evidence of damages, plaintiff strives to make a case for an "attempted extortion" claim. However, there is nothing in the cases cited by the parties to suggest Oregon courts would recognize such a cause of action.

7 - ORDER